### George L. Ryan v. The People of the State of Illinois.

1. INSTRUCTION—*upon preponderance of evidence, held erroneous.* An instruction in this case is held erroneous with particular reference to the clauses thereof which pertain to the determination of where the preponderance lies as affected by the number of witnesses testifying upon the respective sides, and by the appearance and manner of witnesses while testifying.

2. INSTRUCTION—*what phrases are not equivalents.* The phrase, "from all the other circumstances appearing in the trial," and the phrase, "all.the evidence in the case," are not equivalents, and the use of the former instead of the latter is erroneous.

Criminal prosecution for violation of Dram-Shop Act. Error to the County Court of Lawrence County; the Hon. J. D. MADDING, Judge, presiding. Heard in this court at the February term, 1905. Reversed and remanded. Opinion filed September 8, 1905.

S. J. McGEE and J. E. McGAUGHEY, for plaintiff in error.

THOMAS H. CUNNINGHAM, for defendant in error.

MR. JUSTICE MYERS delivered the opinion of the court.

At the October terms, 1903, of the Circuit Court of Lawrence County the grand jury returned an indictment against George L. Ryan, plaintiff in error, by which he is charged with selling intoxicating liquor without a license in violation of the Dram-Shop Act. The cause was duly certified to the County Court as provided by law. A plea of not guilty was entered and at the June term, 1904, the cause was tried by a jury, which returned a verdict finding the defendant guilty. A motion for a new trial and in arrest of judgment were successively interposed and overruled; whereupon the court entered judgment on the verdict and

sentenced the defendant to pay a fine of $100 and costs, from which judgment the defendant prosecutes a writ of error to have the record reviewed by this court.

It appears from the evidence that the defendant was the owner of a tract of land, about thirty acres in extent, located near the village of Bridgeport, in Lawrence county, on which were a hotel, bath and spring houses and other buildings and appurtenances for the pleasure, convenience and accommodation of guests and visitors. It was maintained and conducted as a health resort and known as "Stivers Springs." By written agreement, bearing date July 1, 1903, defendant leased the grounds, about fifteen acres of the tract mentioned, including the hotel, furniture, and all other buildings and improvements on the premises, to Charles Kirkwood, his son-in-law; that thereafter Kirkwood was in possession and apparent control and management of the resort; that under reservation in the lease, defendant and family occupied rooms in the hotel until September 1, 1903, when he moved to his farm one and one-half miles from the "Springs;" that during the months of July and August, 1903, he was engaged in repairing the house on the farm to which he afterwards moved; that by deed dated July 20, 1903, defendant, in consideration of one dollar and love and affection, conveyed to Charles Kirkwood and Adele Kirkwood, his wife (daughter of defendant), a two-acre lot not far from the hotel (whether within the grounds covered by the lease or adjoining thereto does not appear); that Kirkwood erected a building upon said lot and leased it to Claude Lackey, who thereafter kept and conducted a restaurant or refreshment stand in the said building. The evidence furthermore tends to prove that on divers occasions during the months of August, September and October, 1903, intoxicating liquors were sold at the restaurant by Claude Lackey and Pete Theis, who appeared to be in charge. To warrant a verdict of guilty in this case, it was required of the people to prove that Lackey and Theis were agents, clerks or employees of the defendant, and authorized, expressly or impliedly, to sell intoxicating

liquors. It is contended in behalf of the prosecution that the lease and deed to Kirkwood, and the lease by Kirkwood to Lackey, were not in good faith, given and intended as they purport, but that these instruments were executed as a device and scheme to evade the law and protect the defendant. The evidence in support of this theory and contention is meagre and wholly circumstantial, and while we are not disposed to say that the trial court should have instructed the jury to find for the defendant, we are clearly of opinion that the verdict should have been set aside and a new trial granted. Under the state of the evidence shown by the record, considering the degree of proof required to convict in a criminal case, it was highly important that the instructions given to the jury should be substantially correct in statement of the law, and in form, without apparent bias or misleading suggestion. Some of the instructions given in behalf of the prosecution are obnoxious under this requirement. By number 8, the jury are told, " that where a number of witnesses testify directly opposite to each other, the jury are not bound to regard the weight of the evidence as equally balanced." That is the end of the proposition and is not connected with the proposition which follows, save that the two are included and marked as one instruction. The second proposition of law, and a part of No. 8, is: " The jury have a right to determine from the appearance of the witnesses on the stand, their manner of testifying, their apparent candor and fairness, their apparent intelligence or lack of intelligence, and from all surrounding circumstances as appearing on the trial, which witnesses are the more worthy of credit, and to give credit accordingly." Neither proposition contains a correct statement of the law, and linked together as one instruction the error is manifest. It was highly misleading. Whether or not the weight of the evidence is equally balanced was not a question for the jury upon any issue in this case. The jury are not *bound* to believe or regard the weight of evidence one way or other except as the judgment is affected by it. Again in determining the weight or credibility to

be given to the testimony of witnesses, the most essential and important consideration is omitted in this instruction, viz.: "All the evidence in the case." The language of the instruction is, "from all the other circumstances appearing on the trial." This is not the equivalent of "all the evidence in the case." Nor is it equally comprehensive and likely to be understood by the jury as meaning the same thing in the case at bar. The ninth instruction contains a correct proposition of law when applied to all witnesses heard upon the trial, but for the court to limit its application to the witnesses testifying in behalf of the defendant, was likely to be misconstrued by the jury to the prejudice of the defendant. The instruction should have been general and applicable to the testimony of all witnesses or it should not have been given.

All that we have said of the eighth instruction applies with even greater force to the eleventh. Here, again, are two separate disconnected propositions in one instruction, neither of which standing alone or when considered together, correctly states the law. Unless the court is prepared to take the case from the jury, it is never proper to instruct them what they are or are not bound to believe from the testimony of witnesses. The jury may be instructed what to consider as evidence, and the application of it in arriving at their *belief*, a verdict, but beyond that the court may not go. It was prejudicial error to give the eleventh instruction. The proposition of law contained in the twelfth instruction has no application in this case and was well calculated to mislead the jury in passing upon the evidence. As the judgment of the County Court is to be reversed and the cause remanded for another trial, for the errors above considered, we refrain from a discussion of the evidence, no objection having been made in argument to the admission or exclusion of testimony. Judgment reversed and the cause remanded.

                         *Reversed and remanded.*